# United States Court of Appeals for the Federal Circuit

---

**DAVID GROBER,**
*Plaintiff-Appellant,*

AND

**VOICE INTERNATIONAL, INC.,**
*Plaintiff-Appellant,*

v.

**MAKO PRODUCTS, INC., AIR SEA LAND PRODUCTIONS, INC., CINEVIDEOTECH, INC., SPECTRUM EFFECTS, INC., AND BLUE SKY AERIALS, INC.,**
*Defendants-Cross Appellants,*

AND

**DOES 1-10, JORDAN KLEIN, SR., JORDAN KLEIN, JR., AND OPPENHEIMER CINE RENTAL, LLC,**
*Defendants.*

---

2010-1519, -1527

---

Appeal from the United States District Court for the Central District of California in Case No. 04-CV-8604, Judge Jack Zouhary.

Decided:  July 30, 2012

JON E. HOKANSON, Lewis, Brisbos, Bisgaad & Smith LLP, of Los Angeles, California, argued for all plaintiffs-appellants.  On the brief was DAVID GROBER, of Marina Del Rey, California.  Of counsel was EDWIN P. TARVER Lauson & Tarver, LLP, of El Segundo, California.

BRIAN W. WARWICK, Varnell & Warwick. P.A., of The Villages, Florida, argued for defendants-cross appellants.

Before RADER, *Chief Judge*, PROST and MOORE, *Circuit Judges*.

RADER, *Chief Judge*.

The United States District Court for the Central District of California granted summary judgment of non-infringement to the defendants (Mako Products, Inc.; Air Sea Land Productions, Inc.; CineVideoTech, Inc.; Spectrum Effects, Inc.; Blue Sky Aerials, Inc.; Jordan Klein's, Sr.; Jordan Klein's, Jr.; and Oppenheimer Cine Rental, LLC) on the patent owned by David Grober and Voice International, Inc. ("Appellants").  Several defendants cross-appeal the district court's denial of attorney's fees. For the reasons recited below, this court affirms-in-part, vacates-in-part, and remands to the district court.

I.

Appellant David Grober invented a platform that stabilizes a camera for filming motion pictures from moving vehicles.  This technology, known in the entertainment industry as the Perfect Horizon, won Grober an Academy

Award in technical achievement. He also received U.S. Patent No. 6,611,662 ("'662 patent"), entitled "Autonomous Self Leveling, Self Correcting Stabilized Platform," for this technical advance. The invention "compensate[s] for motion caused by waves, currents, wind, and other motion during land, air, and sea operations of a camera." '662 patent Abstract.

For the purposes of this appeal, claim 1 is representative:

> 1. A stabilized platform comprising:
> a **payload platform** for supporting an article to be stabilized;
> a base;
> a stabilizing system connected between the **payload platform** and the base, the stabilizing system including means for moving the payload platform with respect to the base about two different axes for providing the **payload platform** with stabilization in two dimensions;
> a first sensor package for determining, in two transverse directions, motion of a moving object on which the stabilized platform is mounted;
> a second sensor package comprising sensor means for sensing a position of the **payload platform** and for providing information based on the position of the **payload platform** relative to a predetermined position; and
> a control system connected to the means for moving for stabilizing the platform in response to information provided by the first sensor package and the second sensor package, wherein **the second sensor package is fixed to the payload platform**, and the first sensor package is fixed with respect to the base.

'662 patent col. 7 ll. 50-col. 8 ll. 6 (emphasis added).



Fig. 2 illustrates the side view of the platform 100 with its stabilizing technology along two axes. '662 patent col. 3 ll. 6-8.   On one axis, the stabilized platform 100 compensates for unwanted movement.   This compensation occurs with the assistance of a first drive mechanism 10, which is mounted on a fixed side plate 8.   The drive mechanism 10 includes a motor and, potentially, a gear box.   The preferred embodiments teach an encoder attached to the motor to give feedback based on the position of the bottom platform 2.   This mechanism provides one of the two stabilized axes.   A protective housing 16 encloses the drive mechanism 10 (including the motor, gear box, encoder, and associated wiring).   *Id.* at col. 3 ll. 14-31.

The second stabilizing mechanism involves platform 22 which holds the camera.   A second drive mechanism 30 attaches to this mounting platform and stabilizes the platform along another axis.   Figs. 2 and 3 show that the second drive mechanism 30—fixed to the bottom platform

2—mounts orthogonally (i.e., perpendicularly) to the first drive mechanism 10.   In sum, the second drive shaft 24 is orthogonal to the first drive shaft 4 to permit two-dimensional stabilization of the camera platform 22.  *Id.* at col. 3 ll. 31-65.  Fig. 2 shows the stabilized platform 100 in an upright orientation with the ability to compensate for pitch and roll of the vehicle 64.  *Id.* at col. 4 ll. 6-11.



FIG. 3

The '662 patent further teaches a method to achieve a third axis of stabilization along the azimuth axis.  Fig. 3 compensates for azimuth motion by adding a third set of orthogonally positioned drive components to the stabilized platform 100.  This third drive mechanism stabilizes the platform with input from sensor packages A and B. Sensor package A appears on the housing 82, or other disclosed areas; package B on the camera platform 22.  *Id.* at col. 5 ll. 26-39; col. 4 ll. 25-27.

David Grober and Voice International, Inc. sued Cross-Appellants in October 2004 alleging that their manufacture, sale, and lease of a movie stabilization device known as the MakoHead infringed the '662 patent. Cross-Appellants then commenced an *inter partes* reexamination of the '662 patent before the U.S. Patent and Trademark Office ("PTO"). The district court stayed the infringement suit.

In 2006, the trial court lifted the stay and authorized commencement of discovery. The district court held a *Markman* hearing and construed the claim term "payload platform." Based on this interpretation, the district court *sua sponte* concluded that the MakoHead did not infringe the '662 patent. Appellants filed a motion to vacate the district court's summary judgment order, which was denied.

Cross-Appellants sought attorneys fees as sanctions under Rule 11 and attorney fees under 35 U.S.C. § 285. The district court declined to award attorneys fees under either rationale. The district court issued its final judgment of non-infringement and the Appellants timely appealed to this court, which has jurisdiction under 28 U.S.C. §§ 1292(c)(1) and 1295(a)(1).

The PTO completed the reexamination of the '662 patent after Appellants' notice of appeal and confirmed patentability of independent claims 1 and 38 as well as several dependent claims.

## II.

This court reviews a district court's claim construction without deference. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1451 (Fed. Cir. 1998) (en banc). In this case, the district court erred in construing the claim term "payload platform" to mean "the horizontal plate, piece of

surface upon which the device (e.g., a camera) is directly mounted upon or affixed to." *Grober v. Mako Prods., Inc.*, No. 2:04-CV-04-8604, 2009 WL 1587158, at *12 (C.D. Cal. June 4, 2009) ("*Markman Order*").

Before the *Markman* hearing, the parties proposed competing constructions of the term "payload platform." The district court found significant differences in those proposals. *Id.* at *3. Most notably, Cross-Appellants limited the disputed term to a "horizontal surface or plate" upon which the device is mounted or affixed. Appellants, on the other hand, included the three-dimensional "supporting structure" of said "horizontal surface or plate." *Id.* The district court relied heavily on the reexamination history of the '662 patent where Grober narrowed the claims "in order to avoid a significant body of prior art." *Id.* at *2. The prior art was U.S. Patent No. 5,922,039 to Welch et al. ("Welch patent") and U.S. Patent No. 4,143,312 to Duckworth et al. ("Duckworth patent"). The trial court explained: "an understanding of . . . [the] specific structural aspect of the prior art . . . in relation to the 'payload platform' provides meaningful insight into what part of the '662 patent is sought to be captured through use of that term . . . ." *Id.* at *5. In view of the Welch and Duckworth patents, the district court found "the defining characteristic of the '662 patent . . . was the fact that the '662 patent 'requires the second sensor package [be] fixed to the payload platform.'" *Id.* The district court construed the claim term "payload platform" to mean "the horizontal plate, piece of surface upon which the device (e.g., a camera) is directly mounted upon or affixed to." *Id.* at *12.

This court generally gives claim language its "ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-1313 (Fed. Cir. 2005) (en banc) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d

1576, 1582 (Fed. Cir. 1996)). This customary meaning encompasses the understanding of an artisan of ordinary skill in the context of the inventive art. Often this court discerns that context in the claims themselves and the specification, and occasionally the prosecution history as well. *Phillips*, 415 F.3d at 1313. When a patentee makes a "clear and unmistakable disavowal of scope during prosecution," a claim's scope may be narrowed under the doctrine of prosecution disclaimer. *See Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374-75 (Fed. Cir. 2008). Statements made during reexamination can also be considered in accordance with this doctrine. *Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1266 (Fed. Cir. 2012). However, while the prosecution history can inform whether the inventor limited the claim scope in the course of prosecution, it often produces ambiguities created by ongoing negotiations between the inventor and the PTO. *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1289 (Fed. Cir. 2009). Therefore, the doctrine of prosecution disclaimer only applies to unambiguous disavowals. *Id.*

As noted earlier, the trial court emphasized Grober's statements during reexamination of the '662 patent. In these statements, Grober distinguished his invention by explaining that the prior art does not teach "the second sensor package being fixed to the payload platform." He asserted that "Welch never uses the word 'fixed to' or 'mounted on' to describe his potentiometers [sensors] 27 and 29. They are clearly not 'fixed to,' and most definitely not 'wholly fixed to' Platform Structure 18." Regarding Duckworth, Grober argued that it "clearly discloses [that the sensor system] is not fixed to the payload platform [3] as suggested by requestor and listed as part of the Examiner's rejection."

These statements during reexamination do not unambiguously focus on the characteristics of the "payload

platform," let alone distinguish it from the prior art as being a two-dimensional surface. Instead they refer to the placement of the prior art sensors in relation to the element identified by the examiner as the "payload platform." These statements do not address the characteristics of the claimed "payload platform" limitation. Thus these ambiguous statements do not disavow or even clearly describe the structure of the claimed "payload platform." Therefore, this reexamination commentary cannot fairly limit the characteristics of the claim term. *See Computer Docking*, 519 F.3d at 1375 ("Prosecution disclaimer does not apply . . . if the applicant simply describes features of the prior art and does not distinguish the claimed invention based on those features.").

The district court's construction also considered Grober's statement:

> "[Requestor] proposes that Welch's position sensor(s) 27 and/or 29 are fixed to platform 18, the equivalent of Grober's payload platform. This is not supported by Welch's claims, specification or figures. Welch's second sensor package is two distinctly separate sensors located in two separate positions at the gimbal between the framework parts. The parts are not attached or fixed to the payload platform."

*Markman Order* at *9. According to the district court, "Grober argues that the structure on the Welch gimbal-based device that is comparable to his payload platform was FIG 1 item 18 (the Platform Structure) in the Welch patent." *Id.* The trial court erroneously inferred that Grober's reference to the reexamination requestors' arguments (equating the prior art structures with the claim elements) in effect adopted those arguments as his definition of his invention. At no point, however, does

Grober adopt those arguments as an accurate description of his invention. Grober distinguished the arguments but did not admit that they properly characterized the invention.

This court has often stated that prosecution history limits claim meaning when an applicant "clearly and unmistakably" disclaims claim scope or meaning. *See, e.g.*, *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1331 (Fed. Cir. 2012); *Abbott Labs.*, 566 F.3d at 1289; *Computer Docking*, 519 F.3d 1366, at 1375; *Purdue Pharma LP v. Endo Pharms., Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006). Grober's statements were not an unambiguous disavowal that clearly and unmistakably disclaims claim scope or meaning. In this instance, the reexamination history did not define or limit, let alone clearly and unmistakably disclaim, claim scope. In context, Grober's statements do not limit or narrow the "payload platform" to a "horizontal surface." Rather these statements show that Grober referenced three-dimensional prior elements when discussing sensor location in the prior art. In sum, Grober's statements in reference to the prior art did not narrow the meaning of the patent. Thus, the district court's claim construction misread the context of the reexamination process and improperly emphasized a general statement out of context to limit the disputed claim term.

Placing this invention in its proper context, this court finds no reason to limit the claim term "payload platform" to a "horizontal surface." As recited by claim 1, the "stabilized platform compris[es]: a payload platform for supporting an article to be stabilized." '662 patent col. 7 ll. 50-52. The specification refers to the "payload platform" as a three-dimensional structure with hidden (or "dashed") lines in Figs. 2-5 and 13 under the item label 22 (called "camera mounting platform"). *See id.* at col. 3 ll.

31. Fig. 2 illustrates item 22 as a three-dimensional structure for mounting a device (usually a camera). Fig. 3 also locates a sensor package B on item 22, *id.* at col. 5 ll. 29-31, and includes an optional riser 40 "to adjust a height of the camera 42 [shown in Fig. 4] for ease of use," *id.* at col.6 ll.19-23. In sum, the patent consistently depicts the "payload platform" as more than a "surface." *See Phillips,* 415 F.3d at 1314-15.

Accordingly, the claim language and specification show that "payload platform" means "a three-dimensional structure upon which the payload (e.g., a camera) is directly mounted upon or affixed to." Because this court finds that the district court erred in its claim construction of the term "payload platform," this court vacates the district court's claim construction and remands for further proceedings.

## III.

Based on its claim construction, the district court improperly found that the MakoHead did not infringe the '662 patent. The district court's claim construction order states: "Given that such a definition results in a finding of non-infringement, the Court concludes its analysis on this point and goes no further in construing the many other terms offered for consideration by the parties in their *Markman* briefs." *Markman Order* at *12. In response to Appellants' motion for reconsideration, the district court stated "that the parties agreed, should the Court adopt defendants' construction of 'payload platform,' there would be no infringement by the accused device . . . ." *Grober v. Mako Prods., Inc.*, No. 2:04-CV-04-8604, slip op. at 2 (C.D. Cal. Oct. 21, 2009); *see also id.* at 2-3 n.1. Further, the district court mentions in footnote 2 that it did not adopt "the literal verbiage" proposed by

Cross-Appellants but "the end result is the same." *Id.* at 3 n.2.

Additionally, concerning the dispositive nature of the proposed claim construction, defense counsel's statements at the *Markman* hearing were overly broad, if not misleading. Specifically, regarding the "payload platform" term, Defense counsel stated:

> MR. WARWICK: . . .
> On behalf of defendants we believe Your Honor correct. Not that it will be dispositive exactly of every claim because as you know most patent cases focus down on one or two claims that are really at issue. In this case the plaintiffs allege we violated all 38 claims. . . . **virtually every claim except for maybe five or six require the payload platform**. You are exactly right the payload platform is to me unique in this *Markman* hearing portion of the case critical and will dispose of many of the issues to come down one way or the other.
>
> THE COURT: Well, if the accused device does not infringe on one of the claims then it's no longer an infringing device; correct?
>
> MR. WARWICK: Correct, Your Honor, **it has to infringe on all the claims from our view point**.

*Grober v. Mako Prods., Inc.*, No. 2:04-CV-04-8604, p. 8, ll. 9-25 (C.D. Cal. Nov. 3, 2008) ("*Markman Hearing Transcript*") (emphasis added). This exchange conveys misleading advice to the district court. This court's precedent is clear: a patent is infringed if a single claim is infringed. *See, e.g.*, *Intervet America, Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1055 (Fed. Cir. 1989); *see also Z4 Techs., Inc.*

*v. Microsoft Corp.*, 507 F.3d 1340, 1356 (Fed. Cir. 2007) (district court's jury instruction paralleled language of 35 U.S.C § 271(a) by requiring, in-part, that the accused infringing activity be "covered by at least one claim of a patent, before the patent expires").

This court reviews a district court's decision concerning summary judgment under the law of the regional circuit. *MicroStrategy, Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1349 (Fed. Cir. 2005). The United States Court of Appeals for the Ninth Circuit reviews a grant of summary judgment without deference. *Burke v. County of Alameda*, 586 F.3d 725, 730 (9th Cir. 2009).

This court has stated that "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence." *See, e.g.*, *Int'l Visual Corp. v. Crown Metal Mfg. Co.*, 991 F.2d 768, 770 (Fed. Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). However, the district court's power to enter summary judgment does not allow it to bypass performing a complete patent infringement analysis. Patent infringement requires a two-step analysis. First, "the court determines the scope and meaning of the patent claims asserted," and then compares the claims "to the allegedly infringing devices." *Cybor*, 138 F.3d at 1454. In this case, the district court performed the first step. At that point, however, the process hit a couple short circuits. In the first place, the adopted claim construction did not entirely dispose of the case because several claims did not include the construed term. More important, the trial court did not place the accused device alongside each asserted claim for a complete comparison. *See Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1292 (Fed. Cir. 2010) (remand to compare properly construed claims to accused product claim by

claim). This court vacates the district court's grant of summary judgment of non-infringement.

Several discovery motions were pending when the district court, *sua sponte*, found non-infringement. These included motions to compel depositions of Jordan Klein, Sr. and Jordan Klein, Jr. (collectively, "the Kleins"), production of documents related to the accused device, and re-designation of confidentiality designations. While the district court found aspects of these motions persuasive, they were denied or denied-in-part in light of the non-infringement determination. As this case returns to the district court, the court will have the opportunity to afford a proper, and not unduly expansive, scope of discovery.

IV.

The district court properly dismissed the Kleins and Oppenheimer Cine Rental, LLC. ("Oppenheimer") for lack of personal jurisdiction. Jordan Klein, Sr. and Jordan Klein, Jr. are the only two shareholders of Mako Products, Inc. ("Mako"), owning a 10 percent and 90 percent share, respectively. Mako owns the MakoHead stabilizing platform system, which it rents for use in movie and television production. Mako is a Florida corporation, with its only place of business in Florida. The Kleins are both members of Mako's board of directors and listed as the only two "officer/director[s]" in Mako's corporate records with the state of Florida. The Kleins demonstrated the MakoHead at a California trade show on behalf of Mako.

Oppenheimer is a rental company located in Washington that rents hundreds of products, including the MakoHead, to the movie and television industry. Oppenheimer advertises the MakoHead twice a year in ICG, a nation-wide trade publication based in California, as part of its lease agreement with Mako. As the district

court noted, one of Mako's standard equipment lease requirements requires that each lessee "actively market the Mako equipment . . . in its territory" and the "lessee '. . . is an independent contractor and *is not an agent* or employee of [Mako].'" *Grober v. Mako Prods., Inc.*, No. 2:04-CV-04-8604, slip op. at 4 (C.D. Cal. Aug. 29, 2008) ("*Jurisdiction Order*") (emphasis added by district court). The advertisement lists Oppenheimer as the "North West" contact for the MakoHead and two other "West Coast" contacts. These same contacts are also listed on Mako's website. Oppenheimer has also exhibited other products beyond the MakoHead at a California trade show.

This court reviews a determination of personal jurisdiction without deference. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008). "Moreover, we apply Federal Circuit law because the jurisdictional issue is 'intimately involved with the substance of the patent laws.'" *Id.* (quoting *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995)). The facts underlying a determination of personal jurisdiction receive review for clear error. *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010).

When, as here, the district court makes its determination based on the record without an evidentiary hearing, plaintiffs need only show a *prima facie* case for personal jurisdiction. *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003). When analyzing this showing after a motion to dismiss, the district court must accept uncontroverted allegations in plaintiff's complaint as true and resolve any factual conflicts in plaintiff's favor. *Id.*

A personal jurisdiction determination for an out-of-state defendant is a two step inquiry: "whether a forum

state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009) (quoting *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir. 1997)). California and federal due process limitations are "coextensive," and thus the inquiry collapses into "whether jurisdiction comports with due process." *Autogenomics*, 566 F.3d at 1017 (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)).

There are two types of personal jurisdiction—general and specific. In this case, the district court correctly found that Appellants did not make a prima facie showing of general jurisdiction. General jurisdiction arises when a defendant maintains contacts with the forum state that are sufficiently "continuous and systematic," even when the cause of action has no relation to those contacts. *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)).

The district court correctly found that it lacked general jurisdiction over Oppenheimer. Oppenheimer has very limited contacts with California. Oppenheimer has shipped unspecified items to the defendant Spectrum Effects, Inc. of California. However, the record gives no indication of the context and significance of these shipments for Oppenheimer's business. Appellants failed to show that these acts amount to continuous and systematic contacts with California. *See Helicopteros*, 466 U.S. at 418 (holding that "purchases, even if occurring at regular intervals" were insufficient to establish general personal jurisdiction over a nonresident corporation). Additionally, Oppenheimer has exhibited products unrelated to the accused device at a California trade show.

While this may support the inference that Oppenheimer meets potential business partners at trade shows, this showing does not rise above a sporadic and insubstantial contact with California. *See Campbell Pet Co. v. Miale*, 542 F.3d 879, 881-884 (Fed. Cir. 2008) (finding no general jurisdiction from twelve sales yielding about $14,000 in revenue, conference attendance in forum where products are demonstrated and orders taken, and a generally accessible website). Similarly, an isolated advertisement in a nationally distributed trade publication based in California and Mako's website listing Oppenheimer as a contact do not amount to a continuous and systemic presence in California. *See id.*; *see also Conqoleum Corp. v. DLW Aktienqesellschaft*, 729 F.2d 1240, 1242-43 (9th Cir. 1984) (finding that sales and marketing efforts in California, including solicitation of orders, promotion of products through mail and showroom display, and attendance at trade shows were not sufficient to give rise to general jurisdiction).

The district court also correctly found that Appellants did not make a prima facie showing of specific jurisdiction. "Specific jurisdiction . . . must be based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic." *Autogenomics*, 566 F.3d at 1017 (citing *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003)). When analyzing specific personal jurisdiction over a nonresident defendant, a court considers whether: "(1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum state, and (3) assertion of personal jurisdiction is reasonable and fair." *Elecs. For Imaging*, 340 F.3d at 1350. The plaintiff has the burden of proving parts one and two of the test, and then the burden shifts to the

defendant to prove that personal jurisdiction is unreasonable.  *Id.*  As this court previously explained "[t]he first two factors correspond with the 'minimum contacts' prong of the *International Shoe [v. Washington*, 326 U.S. 310 (1945)] analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Inamed Corp.*, 249 F.3d at 1360.

Appellants did not show that Oppenheimer has sufficient contacts with the state of California to warrant specific jurisdiction.  Appellants could not establish that Oppenheimer has operated or rented the MakoHead in California.  Beyond shipment of an unspecified amount of products between itself and Spectrum Effects, Inc., Oppenheimer did not operate at all in California.  In fact, Appellants did not show that out of the hundreds of available products, the accused MakoHead, was ever shipped to California.

While Oppenheimer advertised the MakoHead twice per year in a magazine based in California, this trade publication was nationally distributed and not limited to California.  Appellants could not show that Oppenheimer targeted the California market at all.  Appellants at best showed Oppenheimer on a list as a North West contact, with two other West Coast contacts also on the list.  Again, this attenuated evidence does not show that California was a target market for Oppenheimer.  In sum, Oppenheimer, on this record, did not purposefully avail itself of the privileges of conducting activities within California, "thus invoking the benefits and protections of its laws." *See McIntyre Mach., Ltd., v. Nicastro*, 131 S.Ct. 2780, 2787-88 (2011); *see also Cascade Corp. v. Hiab-Foco AB*, 619 F.2d 36, 37-38 (9th Cir. 1980) (finding that an ad in a national publication available in the forum state did not establish specific jurisdiction).

The district court also properly declined to find personal jurisdiction over the Klein defendants. The fiduciary shield doctrine buffers corporate officers from personal jurisdiction when their official duties were their only contact with a forum state. *See Kransco Mfg., Inc. v. Markwitz*, 656 F.2d 1376, 1379 (9th Cir. 1981) (individual's attendance at California trade show in corporate capacity insufficient to establish personal jurisdiction for out-of-state defendant). In support of this, the district court cited *Nelson v. Adams USA Inc.*, 529 U.S. 460, 470-71 (2000), for the premise that "the court should not lightly disregard the corporate form; a corporation's veil may not be pierced merely because it has only one owner." *Jurisdiction Order* at 8.

This court finds no error in the district court's personal jurisdiction determinations. Appellants did not show that the Kleins or Oppenheimer performed any relevant activities to establish general or specific personal jurisdiction. This court concludes that the district court properly declined personal jurisdiction over the Kleins and Oppenheimer.

V.

The Cross-Appellants filed a motion before the district court under Federal Rule of Civil Procedure 11 and 35 U.S.C. § 285 seeking attorney fees and litigation costs. The district court denied Cross-Appellants' motion under Rule 11 as procedurally improper because it was filed after summary judgment. *Grober v. Mako Prods., Inc.*, No. 2:04-CV-04-8604, slip op. at 2 (C.D. Cal. July 1, 2010). In light of this court vacating the grant of summary judgment, the cross-appeal from the denial of the Rule 11 motion is dismissed as moot. In the event of a procedurally proper Rule 11 motion on remand, the district court may consider it in the first instance. The cross-

appeal from the district court's denial of attorney fees under 35 U.S.C. § 285 is also dismissed as moot. In view of this court's opinion, Cross-Appellants are not a prevailing party to whom an award could be made. *See Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1564 (Fed. Cir. 1983).

## VI.

For the foregoing reasons, this court vacates the district court's claim construction and vacates the grant of summary judgment for non-infringement. This court remands for further proceedings. Finally, this court affirms the district court's personal jurisdiction determination.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**