NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CENTILLION DATA SYSTEMS, LLC,**
*Plaintiff-Appellant,*

**v.**

**QWEST COMMUNICATIONS INTERNATIONAL, INC., QWEST CORPORATION, AND QWEST COMMUNICATIONS CORPORATION,**
*Defendants-Appellees.*

---

2013-1084

---

Appeal from the United States District Court for the Southern District of Indiana in Nos. 04-CV-0073 and 04-CV-2076, Judge Larry J. McKinney.

---

Decided: November 25, 2013

---

VICTOR M. WIGMAN, Blank Rome LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief were PAUL M. HONIGBERG and KENNETH L. BRESSLER, of New York, New York.

VINCENT J. BELUSKO, Morrison & Foerster, LLP, of Los Angeles, California, argued for defendants-appellees.

---

Before RADER, *Chief Judge,* LOURIE, and MOORE, *Circuit Judges.*

MOORE, *Circuit Judge.*

Centillion Data Systems, LLC (Centillion) appeals from the district court's grant of summary judgment to Qwest Communications International, Inc. (Qwest) that various claims of U.S. Patent No. 5,287,270 ('270 patent) are not infringed. Centillion also challenges the award of costs to Qwest. Because the district court erred in concluding that there is no genuine factual dispute regarding infringement by one of the two accused products, but did not err with respect to the other product, we *affirm-in-part* and *reverse-in-part* the judgment of noninfringement, *vacate* the award of costs, and *remand* for further proceedings.

## BACKGROUND

The '270 patent discloses systems for collecting, processing, and delivering billing information from a service provider, such as a telephone company, to a customer. '270 patent col. 1 ll. 15–20. The patent teaches providing call data to customers in a format appropriate for a personal computer. *Id.* col. 2 l. 66 – col. 3 l. 6. Claim 1 is representative:

A system for presenting information . . . to a user by a service provider . . . comprising:

storage means for storing individual transaction records . . . ;

data processing means . . . ;

means for transferring . . . said individual transaction records . . . to said data processing means;

said *data processing means generating preprocessed summary reports as specified by the user*

from said individual transaction records . . . *and organizing said summary reports into a format for storage, manipulation and display on a personal computer* data processing means;

means for transferring said individual transaction records including said summary reports . . . to said personal computer data processing means

. . . .

'270 patent claim 1 (emphases added).

Centillion accused Qwest of infringing various claims of the '270 patent through its Logic, eBill Companion, and Insite systems (accused systems).[1]   Customers who sign up to use the accused systems receive phone billing information from Qwest in electronic form.   The district court granted summary judgment of noninfringement to Qwest.   The court held that, based on its undisputed claim constructions, Logic lacks the "as specified by the user" limitation and eBC lacks the "data processing means generating preprocessed summary reports . . . and organizing said summary reports into a format for . . . display" limitation.   *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, Nos. 1:04-cv-0073-LJM-DKH, 1:04-cv-2076, 2012 WL 4897619 (S.D. Ind. Oct. 15, 2012) (*SJ Order*).   The court awarded costs to Qwest.

Centillion appeals.   We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review grants of summary judgment under the law of the regional circuit.   *Grober v. Mako Prods., Inc.*,

---

[1]   For the purposes of this appeal, eBill Companion and Insite are the same product and are referred to collectively as "eBC."

686 F.3d 1335, 1344 (Fed. Cir. 2012).  The Seventh Circuit reviews the district court's grant of summary judgment *de novo*.  *Schindler v. Seiler*, 474 F.3d 1008, 1010 (7th Cir. 2007).  Summary judgment is appropriate when, drawing all justifiable inferences in the nonmovant's favor, there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. "Data processing means . . . organizing said summary reports into a format for . . . display"

The district court concluded that the "data processing means" is a means-plus-function limitation having the functions of "generating preprocessed summary reports" and "organizing said summary reports into a format for . . . display on a personal computer data processing means."  *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 529 F. Supp. 2d 982, 1001 (S.D. Ind. 2008) (*Markman Order*).  It determined that the corresponding structure is "a computer that is programmed to segregate data by customer and record type, to edit and accumulate data to produce reports, to create database tables . . . and to convert data."  *Id.*  The court held that there was no genuine dispute that the accused eBC system does not organize the summary reports "into a format for . . . display on a personal computer."  *SJ Order*, 2012 WL 4897619, at *11.  It concluded that, although eBC generates summary report data in the form of .TXT files, further processing by a different system (using .FMT files) is needed to format .TXT files for display on a PC.  *Id.*

Centillion contends that the court misapplied the claim construction.  It argues that the claims require only that the summary reports be in a PC-compatible format, and that eBC meets the "format for . . . display" limitation because .TXT files contain PC-compatible ASCII text.  Centillion contends that no additional formatting using

.FMT files is needed to display a .TXT file on a PC. Centillion further argues that the district court's infringement analysis was premised on the erroneous assumption that the construed claims require creation of a database table after processing a .TXT file using an .FMT file. It contends that, regardless, a genuine dispute of material fact exists as to whether an ordinary artisan would describe a .TXT file as a "database table."

Qwest counters that the district court correctly concluded that eBC does not organize the summary reports into a format appropriate for display on a PC. It argues that the district court's construction requires that the "data processing means" creates a database table before the file is transferred to a PC. Qwest contends that a .TXT file, by itself, is not a database table and is not in a format "for display on a personal computer."

We agree with Centillion that there is a genuine factual dispute whether .TXT files meet the limitation at issue. Evidence in the record suggests that .TXT files may be in a format that allows them to be displayed on a PC. *See* J.A. 3512.

Qwest's assertion that the claims require creation of database tables is incorrect. There is no language in the claims that requires creation of database tables. The claims require only that the data processing means generate the preprocessed summary reports and organize them into a format for storage, manipulation, and display. The district court's construction, quite properly, does not require that database tables be generated. Rather, it identifies the structure for the data processing means as a computer which, via programming, is capable of creating database tables. Centillion created a genuine issue of material fact regarding whether Qwest's eBC system meets the "format . . . for display limitation" because a trier of fact may find that it organizes summary reports into a format for display, *i.e.*, a .TXT file. Even if the data

processing means was required to create a database table, which it is not, the record contains testimony of a Centillion expert that a person of ordinary skill in the art would consider a .TXT file to be a "database table." *See* J.A. 4272; J.A. 4753. To the extent that summary judgment of noninfringement was granted on the basis of a database table limitation, it is in error. There is a genuine issue of material fact on this record as to whether .TXT files and the structure that creates them satisfies the "format for . . . display" limitation.

## B. "As specified by the user"

The district court construed "as specified by the user" to mean "the service customer selects, or makes specific, the character of" the summary reports. *Markman Order*, 529 F. Supp. 2d at 1003. At the district court, Centillion argued that there was at least a genuine factual dispute over whether three separate features met this limitation: (1) customers' requests to use a project account code (PAC) to classify phone calls by employee or office; (2) Qwest's customization of data files in response to customer requests; and (3) the "On Demand" feature. The Logic system includes only the first feature, and the eBC system includes all three. The court concluded that there were no genuine issues of material fact that features (1) and (2) do not meet the limitation at issue. However, it determined that a genuine dispute existed with respect to the On Demand feature. *SJ Order*, 2012 WL 4897619, at *9–10. The court entered summary judgment of noninfringement as to the Logic system on the basis of the "as specified by the user" limitation. *Id.* at 9.

## 1. PACs

The district court held that there was no genuine factual dispute that Qwest's customers' use of PACs is "configured completely outside of the [accused systems'] application framework." *SJ Order*, 2012 WL 4897619, at *9. The court determined that, like a telephone number,

a PAC is a "mere piece of data" that cannot "make specific the character of" a summary report, as required by its claim construction.  *Id.*

We agree.  Customer requests to include a PAC do not "make specific the character of" summary reports within the meaning of the claims.  By enabling the use of a PAC, customers allow for the inclusion a piece of data that goes into the reports, but this does not specify or select the "character" of the reports.  Indeed, the PAC field is always present in the data files, whether the customer chooses to use it or not.  *Id.* at *3.  Because the inclusion of PAC data is the only basis upon which Centillion argues that the Logic system meets the "as specified by the user" limitation, we affirm the district court's judgment that the Logic system does not infringe.  Inclusion of PAC data would likewise not be a basis for claiming that eBC meets the "as specified by the user" limitation.

## 2. Customization

The district court determined that Centillion conceded in the previous appeal that, if customers do not use Qwest's client application software, they do not infringe. *SJ Order*, 2012 WL 4897619, at *7, *9; *see Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1286 n.2 (Fed. Cir. 2011).  Because it is undisputed that customized files cannot be used with Qwest's application software, the court concluded that Qwest's customization of data-containing .TXT files in response to customer requests does not meet the "as specified by the user" limitation.  *SJ Order*, 2012 WL 4897619, at *9.

Centillion argues that there is at least a genuine issue of material fact regarding whether customization of data files in response to a customer request meets the "as specified by the user" limitation.  Centillion contends that it did not concede that direct infringement by customers requires the use of Qwest's own application software as opposed to third-party application software.  Centillion

contends that its previous arguments focused on direct infringement by *Qwest* and on whether the claimed invention is "used" within the meaning of 35 U.S.C. § 271(a).

We agree that Centillion did not concede that customers who use third-party software do not infringe. A statement during an argument made to a court constitutes a conclusive "judicial admission" only if the concession is "clear, deliberate, and unambiguous." *United States v. Cunningham*, 405 F.3d 497, 504 (7th Cir. 2005); *see also Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995). Centillion's statements regarding third-party software in the previous appeal do not meet the Seventh Circuit's standard for a judicial admission. Centillion made its statements in the context of its argument that Qwest "uses" the accused systems. J.A. 4315. Because Centillion's arguments were not directed to customer infringement, Centillion could not have *deliberately* conceded that the customers must use Qwest's application software to infringe. While the statements read in isolation imply a requirement that Qwest software be used, in the context of the argument made to the court in that appeal we cannot conclude that Centillion's statements amount to a concession for all purposes.

To the extent that the district court concluded that customization of .TXT files for use with third-party software cannot meet the "as specified by the user" limitation, we do not agree. There is a genuine issue of material fact whether the eBC system satisfies this limitation based on its capability of generating summary reports in which Qwest has customized .TXT files at the request of the customer.

### 3. "On Demand"

eBC's "On Demand" feature "allows a customer to submit a request to receive billing information for a previous billing cycle." *SJ Order*, 2012 WL 4897619, at *9. The district court determined that the eBC On De-

mand feature meets the "as specified by the user" limitation and there was a question of fact as to whether any customer actually used the feature. *Id.* As an alternative basis to affirm the judgment of noninfringement by eBC, Qwest argues that On Demand requests do not "make specific the character of" summary reports because they only provide summaries for previous billing cycles and do not materially affect the reports. Qwest also contends that there is no evidence that customers used the On Demand feature in conjunction with the accused eBC system.

We agree with the district court. As the court correctly concluded, customers' ability to "select a subset of available time ranges" shows that the On Demand feature meets the "as specified by the user" limitation. *Id.* The report's character changes after an On Demand request because the report becomes directed to past rather than current billing information. By limiting the range to a particular billing cycle, the customer "makes specific the character of" summary reports provided by eBC. Furthermore, record evidence shows that On Demand files can be downloaded via the eBC system and that a customer attempted to download such files. J.A. 4554; J.A. 4551; *see SJ Order*, WL 4897619, at *9. We hold that the district court did not err in concluding that On Demand meets the "as specified by the user" limitation and that there is a triable issue whether a customer has used the On Demand feature.

## C. "Summary reports"

The district construed the "summary reports" limitation as "a collection of analyzed and/or reorganized data." *See SJ Order*, 2012 WL 4897619, at *11. It held that .TXT files meet this limitation. *Id.* The court noted that the data is "reorganized" in that eBC "organizes the billing information by customer and inserts that information into various .TXT files." *Id.* Qwest argues that

the district court erred and that .TXT files are not "summary reports" because they do not include "reorganized data" within the meaning of the claims.

We again agree with the district court's conclusion. Evidence in the record indicates that .TXT files are a product of analysis and reorganization of raw data. *Id.* Thus, the district court did not err in concluding that .TXT files meet the "summary report" limitation.

### D. Costs

Because we reverse the summary judgment of noninfringement with respect to eBC, we vacate the district court's award of costs to Qwest. *See Corley v. Rosewood Care Ctr., Inc. of Peoria*, 142 F.3d 1041, 1056 (7th Cir. 1998).

### CONCLUSION

We *affirm* the district court's grant of summary judgment of noninfringement with respect to Logic, but *reverse* its grant of summary judgment of noninfringement with respect to eBC and *remand* for further proceedings. We *vacate* the district court's award of Costs to Qwest.

**AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED, AND REMANDED**

### COSTS

No costs.