Concurring opinion filed by Circuit Judge Reyna.
Hughes, Circuit Judge.
M-I Drilling Fluids U.K. Ltd. and M-I LLC sued Dynamic Air Ltda. in the U.S. District Court for the District of Minnesota, alleging infringement of five U.S. patents. The district court dismissed the case for lack of personal jurisdiction. Because Rule 4(k)(2) of the Federal Rules of Civil Procedure supports the exercise of specific personal jurisdiction over Dynamic Air Ltda., we reverse and remand for further proceedings.
I
M-I Drilling is a private limited company organized under the laws of the United Kingdom and has its principal place of business in the United Kingdom. M-I LLC (together with M-I Drilling, M-I) is a U.S. company incorporated in Delaware with its principal place of business in Texas. M-I supplies systems and equipment used in handling drilling waste created, for instance, around oil rigs in offshore oil exploration platforms.
Relevant here, M-I Drilling owns five U.S. patents- U.S. Patent Nos. 6,702,539 B2, 6,709,217 B1, 7,033,124 B2, 7,186,062 B2, and 7,544,018 B2 (the asserted patents). M-I LLC is an exclusive licensee of the asserted patents. The patents are generally directed to methods, systems, and apparatuses used in the collection, conveyance, transportation, and storage of drilling waste created around undersea oil wells. The patents are claimed to cover, among other things, pneumatic conveyance systems installed around oil drilling rigs and used to transfer drill cuttings from the oil rigs to receiving ships.
Dynamic Air Ltda. (DAL) is a corporation organized under the laws of Brazil and has its principal place of business in Brazil. DAL is a subsidiary of Dynamic Air Inc. (DAI), a Minnesota corporation with its principal place of business in Minnesota.
Between October 2011 and January 2012, the Brazilian state-owned oil company Petróleo Brasileiro S.A. (Petrobras) requested proposals for the installation of pneumatic conveyance systems on ships to assist in the removal of waste created by drilling undersea oil wells. M-I Swaco do Brasil-Comércio Serviços e Mineração Ltda., M-I Drilling's "sister company and customer" in Brazil, and DAL both submitted their proposals. J.A. 13. DAL won the bid and thereafter designed, manufactured, and operated at least three pneumatic conveyance systems. In February 2013, DAL installed a conveyance system *999 that pneumatically conveyed drill cuttings from "P-59," an offshore oil drilling rig, onto the HOS Resolution , a U.S.-flagged ship. In August 2013, DAL installed a similar conveyance system on board the HOS Pinnacle , another U.S.-flagged ship, to remove drill cuttings from "P-III," another offshore oil drilling rig.
M-I then sued DAL in the U.S. District Court for the District of Minnesota, alleging that DAL infringed the asserted patents by making, selling, and operating pneumatic conveyance systems such as those on the HOS Pinnacle and the HOS Resolution . DAL moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2), arguing that the district court could not exercise specific personal jurisdiction over it under Rule 4(k)(2) consistent with due process. The district court granted that motion and dismissed the case after finding that, although the alleged infringing activities took place on U.S.-flagged ships that are themselves U.S. territory, the contract between Petrobras and DAL did not identify the ships on which DAL would be required to make installations. As such, in the district court's view, DAL did not purposefully avail itself of the privilege of conducting activities within the United States because its contacts with the HOS Pinnacle and the HOS Resolution were exclusively due to the unilateral activity of Petrobras. J.A. 19-20. The court also concluded that the exercise of specific personal jurisdiction over DAL would neither be reasonable nor fair. J.A. 22-25.
M-I appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).
II
Personal jurisdictional issues in patent infringement cases are reviewed de novo and under our precedent. Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico , 563 F.3d 1285, 1293 (Fed. Cir. 2009).
Where, as here, a "district court's disposition as to the personal jurisdictional question is based on affidavits and other written materials in the absence of an evidentiary hearing, a plaintiff need only to make a prima facie showing that defendants are subject to personal jurisdiction." Elecs. for Imaging, Inc. v. Coyle , 340 F.3d 1344, 1349 (Fed. Cir. 2003). Moreover, "[i]n the procedural posture of a motion to dismiss, a district court must accept the uncontroverted allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." Id. ; see Graphic Controls Corp. v. Utah Med. Prods., Inc. , 149 F.3d 1382, 1383 n.1 (Fed. Cir. 1998) (noting that the district court's task in evaluating whether the plaintiff has made a prima facie showing of personal jurisdiction over the defendant requires construing the pleadings and affidavits in the light most favorable to the plaintiff).
Rule 4(k)(2) allows "a court to exercise personal jurisdiction over a defendant if (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." Synthes , 563 F.3d at 1293-94. "The third requirement under Rule 4(k)(2) -the due process analysis-contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." Id. at 1295. " Rule 4(k)(2), therefore, serves as a federal long-arm statute, which allows a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process." Id. at 1296.
*1000 Here, the parties only dispute the third requirement-whether exercise of personal jurisdiction over DAL comports with due process. "[D]ue process requires only that in order to subject a defendant to a judgment in personam, [the defendant must] have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Int'l Shoe Co. v. Washington , 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer , 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940) ). "Depending on their nature and number, a defendant's contacts with a forum can provide a court with general jurisdiction or specific jurisdiction." Synthes , 563 F.3d at 1297. M-I asserts only specific personal jurisdiction. Relevant to that determination, we apply a three-part test considering whether: (1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to the defendant's activities with the forum; and (3) assertion of personal jurisdiction is reasonable and fair. Id . The plaintiff bears the burden as to the first two requirements, and if proven, the burden then shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz , 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ; Grober v. Mako Prods., Inc. , 686 F.3d 1335, 1346 (Fed. Cir. 2012).
The district court found here that DAL's contacts with the HOS Pinnacle and the HOS Resolution were "due to the unilateral activity of [Petrobras] and random insofar as [they were] completely dependent on Petrobras's direction."[1] J.A. 19. Because Petrobras "had exclusive control over where the accused systems were installed," id. , the district court concluded that DAL had not " 'purposefully availed itself of the privilege of conducting activities' within the United States," J.A. 19-20. To bolster its analysis, the court relied on Bellisio Foods, Inc. v. Prodo Pak Corp. , a breach of contract action in which the district court concluded that the defendants had not purposefully directed their activities to Minnesota because the plaintiff asked for contract performance in Minnesota after negotiations over the contract formation had concluded. No. 07-CV-4520(PJS/JJG), 2008 WL 4867352, at *6-9 (D. Minn. Nov. 4, 2008). M-I argues that the court's analysis is inconsistent with our relevant precedent. We agree.
Our subject matter jurisdiction over this appeal is grounded in the commercial tort of patent infringement, not a contract dispute between the parties. In patent infringement disputes, our precedent *1001 makes clear that "the jurisdictional inquiry is relatively easily discerned from the nature and extent of the commercialization of the accused products or services by the defendant in the forum." Avocent Huntsville Corp. v. Aten Int'l Co. , 552 F.3d 1324, 1332 (Fed. Cir. 2008) (emphasis added). We have held, for instance, that a Brazilian defendant purposefully directed its allegedly infringing activities to the United States where its representative brought the accused products into the United States from Brazil to display the items at a trade show. Synthes , 563 F.3d at 1297-98 ; accord Nuance Commc'ns, Inc. v. Abbyy Software House , 626 F.3d 1222, 1234 (Fed. Cir. 2010) ("Abbyy Production has purposefully imported the accused products into California, made those products available for sale through an established distribution chain, and the cause of action for patent infringement is alleged to arise out of these activities. No more is required for specific jurisdiction."); Beverly Hills Fan Co. v. Royal Sovereign Corp ., 21 F.3d 1558, 1565 (Fed. Cir. 1994) ("The allegations are that defendants purposefully shipped the accused fan into Virginia through an established distribution channel. The cause of action for patent infringement is alleged to arise out of these activities. No more is usually required to establish specific jurisdiction."). Indeed, "even a single contact with a forum state may suffice for personal jurisdiction if it is directly and substantially related to the plaintiff's claim" of patent infringement. Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc. , 148 F.3d 1355, 1359 (Fed. Cir. 1998). Here, it is undisputed that DAL installed pneumatic conveyance systems on the HOS Pinnacle and the HOS Resolution . DAL then deliberately continued to engage in the allegedly infringing activities aboard the ships even after M-I had cautioned DAL that its systems infringed the asserted patents. J.A. 1344 ¶ 33; see also J.A. 392 ¶¶ 25-26, 35, 38; J.A. 1341 ¶¶ 23-24. Nothing more is required to show that DAL purposefully directed its activities at the United States.
The district court erroneously focused on the contract between Petrobras and DAL. Even if the contract directed where the accused systems were installed and operated, DAL controlled the specifics of its own continued performance under the contract. There is no evidence, for instance, that Petrobras contractually required DAL to use allegedly infringing components when the latter fabricated the pneumatic conveyance systems on the U.S.-flagged ships. Moreover, DAL, not Petrobras, kept the systems operating on the HOS Resolution through September 2015, and on the HOS Pinnacle through August 2015. J.A. 1341 ¶¶ 23-24. Such deliberate presence of DAL and its systems in the United States enhance its affiliation with the forum and "reinforce the reasonable foreseeability of suit there." Burger King , 471 U.S. at 476, 105 S.Ct. 2174. Far from being "random, fortuitous, or attenuated," id. at 480, 105 S.Ct. 2174, the totality of DAL's contacts aboard the ships compels the conclusion that DAL purposefully directed its activities at the United States.
Although the district court did not address the issue, it is undisputed that M-I's claims for patent infringement arise from or relate to DAL's accused infringing activities in the United States. Accordingly, M-I has met its burden to make a prima facie showing that DAL is subject to specific personal jurisdiction in a U.S. court.
Because DAL's activities were purposefully directed at the United States and the claim of patent infringement arises out of those contacts, the burden now shifts to DAL to present a "compelling case that the presence of some other considerations *1002 would render jurisdiction unreasonable." Id . at 477, 105 S.Ct. 2174. In determining whether the exercise of specific personal jurisdiction over a defendant would be reasonable and fair, we consider five due process factors: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. Id . Given that M-I LLC, one of the allegedly injured parties and the exclusive licensee of the asserted patents, is a U.S. domiciliary, it has a paramount interest in obtaining convenient and effective relief in a U.S. court. Indeed, Synthes , a close factual analog to the instant case, compels that conclusion.
Synthes involved a patent infringement suit filed by a U.S. plaintiff against a Brazilian company ( GMReis). 563 F.3d at 1297. GMReis had no office, subsidiary, or licensee in the United States. We applied Rule 4(k)(2), and held that the entire United States was an available forum. Id . at 1300. We acknowledged that the burden on GMReis was "significant," given that it would have been "required to traverse the distance between its headquarters in Brazil and the district court in California," and would have been "required to submit itself to a foreign nation's judicial system." Id. at 1299. We observed, however, that "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." Id. (quoting World-Wide Volkswagen Corp. v. Woodson , 444 U.S. 286, 294, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ). Balancing the factors, we held that any burden on GMReis was "sufficiently outweighed by the interest of the United States in adjudicating the dispute and the interest of Synthes [the patent owner] in obtaining effective and convenient relief, the second and third due process factors. The United States has a 'substantial interest' in enforcing the federal patent laws." Id . (emphasis added). So too here. Because M-I LLC is a U.S. plaintiff trying to enforce its U.S. patents for alleged infringing activity in a U.S. territory,[2] in light of Synthes , the first three factors strongly favor exercising specific personal jurisdiction over DAL. See N. Am. Philips Corp. v. Am. Vending Sales, Inc. , 35 F.3d 1576, 1580 (Fed. Cir. 1994) (noting that the forum "clearly has an interest in prohibiting the importation of infringing articles into its territory"); Beverly Hills Fan , 21 F.3d at 1568 (holding that the forum's interest in discouraging injuries within its territory extends to patent infringement actions).
The fourth and the fifth due process factors "are concerned with the potential clash of substantive social policies between competing fora and the efficiency of a resolution to the controversy." Synthes , 563 F.3d at 1300. But the forum here is the entire United States, so no competing U.S. forum is available to M-I for its infringement claims. As such, no other U.S. forum exists with respect to which there is a clash of social policies or with which to compare the efficiency of a resolution. And to the extent we give any weight to the procedural and substantive interests of other nations in the context of Rule 4(k)(2), "we have no reason to believe that 'the Federal Government's interest in its foreign relations policies' with Brazil will be hindered by allowing the district court to *1003 exercise personal jurisdiction" over DAL. Id. (quoting Asahi Metal Indus. Co. v. Super. Ct. of Cal. , 480 U.S. 102, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) ).
On balance, this is not one of those "rare cases" in which fair play and substantial justice defeat the reasonableness of a U.S. court exercising personal jurisdiction over a defendant. Id. ; cf. Tech. Patents, LLC v. Deutsche Telekom AG , 573 F.Supp.2d 903 (D. Md. 2008) (finding that due process limits the court from exercising personal jurisdiction over 131 foreign defendants because haling those telecom defendants into the court for the action of its subscribers would have a "chilling effect" given the far-reaching nature of the messaging technology that would ensnare nearly every telecom company in the world), aff'd , 700 F.3d 482 (Fed. Cir. 2012), cert. denied , 571 U.S. 939, 134 S.Ct. 67, 187 L.Ed.2d 254 (2013). Accordingly, DAL has not met its burden to present a compelling case that the assertion of personal jurisdiction over it is unreasonable or unfair under the five due process factors.
III
For the foregoing reasons, we conclude that exercising specific personal jurisdiction over DAL under Rule 4(k)(2) comports with due process. We thus reverse the district court's dismissal for lack of personal jurisdiction and remand for further proceedings.
REVERSED AND REMANDED
Costs to appellants.

The district court decided in a related action between M-I and DAI (DAL's parent entity) that U.S. territory extends to the HOS Pinnacle and the HOS Resolution . DAL did not dispute that issue in its Rule 12(b)(2) motion. J.A. 18 n.14; see also J.A. 421. "It is the general rule ... that a federal appellate court does not consider an issue not passed upon below." Singleton v. Wulff , 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). Our precedent generally counsels against entertaining arguments not presented to the district court. Sage Prod., Inc. v. Devon Indus., Inc. , 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("In short, this court does not 'review' that which was not presented to the district court."); see also Harris Corp. v. Ericsson Inc. , 417 F.3d 1241, 1251 (Fed. Cir. 2005) ("An appellate court retains case-by-case discretion over whether to apply waiver."). Because M-I alleged that U.S.-flagged ships themselves are U.S. territory for the purposes of patent law; DAL affirmatively assumed so in its motion to dismiss for lack of personal jurisdiction; the district court accepted that assumption in deciding the motion; and DAL's brief here does not provide any reason why it failed to argue this issue below, we deem the issue waived.

As noted in footnote 1, DAL waived its argument that the alleged infringing activity occurred outside the United States.